UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARK BROWN,<br>       Plaintiff,<br><br>       v.<br><br>THE WHEATLEIGH CORPORATION,<br>L. LINFIELD SIMON, SUSAN SIMON,<br>and MARC WILHELM,<br>       Defendants. | )<br>)<br>)<br>)<br>)   Civil No. 3:18-cv-30056-KAR<br>)<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT AS TO THE INAPPLICABILITY OF THE EXECUTIVE EXEMPTION,
DEFENDANTS' MOTION TO DISMISS PLAINTIFF MARK BROWN'S COMPLAINT FOR
FRAUD ON THE COURT, AND DEFENDANTS' MOTION FOR LEAVE TO FILE A
SUPPLEMENTAL BRIEF
(Dkt Nos. 85, 96, 109)

ROBERTSON, U.S.M.J.

Plaintiff Mark Brown ("Plaintiff") is a former employee of the defendant The Wheatleigh Corporation ("Wheatleigh"), which was owned and operated by the remaining defendants L. Linfield Simon, Susan Simon, and Marc Wilhelm ("Wilhelm") (collectively, "Defendants"). Plaintiff alleges that Defendants violated the Fair Labor Standards Act ("FLSA") by misclassifying him as an exempt employee and failing to pay him overtime wages. Defendants assert that Plaintiff fits within the executive and administrative exemptions and was not entitled to overtime compensation. Plaintiff has moved for partial summary judgment as to the inapplicability of the executive exemption (Dkt. No. 85). Defendants oppose Plaintiff's motion and have moved for dismissal of Plaintiff's claims on the basis that he has committed a fraud on the court (Dkt. No. 107). Defendants have also filed a motion seeking leave to file a

supplemental brief regarding their continued assertion of the administrative exemption (Dkt. No. 109). The parties have consented to this court's jurisdiction (Dkt. No. 31). *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. For the reasons stated below, Defendant's motion to dismiss based on fraud on the court is DENIED, Plaintiff's motion for partial summary judgment is GRANTED, and Defendants' motion for leave to file a supplemental brief is DENIED.

I. FACTS[1]

Wheatleigh is a 19-room luxury hotel and fine-dining restaurant located in Lenox, Massachusetts (Def. SOF ¶ 18; Pl. Resp. ¶ 18). Plaintiff was employed in a front-of-the-house position as Wheatleigh's Guest Services Manager (Pl. SOF ¶¶ 2-3; Def. Resp. ¶¶ 2-3). The parties dispute when Plaintiff's tenure as Guest Services Manager began – according to Plaintiff it was in 2015, while Defendants maintain that he did not hold the title until March 2016 and did not formally transition to the position until June 2016 – but agree that it ended in 2018 (Pl. SOF ¶ 2; Def. Resp. ¶ 2; Def. SOF ¶ 19; Pl. Resp, ¶ 19). The front-of-the-house department also included valet, reservations, front office, and concierge (Pl. SOF ¶ 3; Def. Resp. ¶ 3).

Plaintiff supervised certain employees during his time as Guest Services Manager, including Wheatleigh's valet and front office staff (Def. SOF ¶¶ 50-51; Pl. Resp. ¶¶ 50-51). Between April 11, 2016, and his final date of employment, he did not supervise Marc Wilhelm, Sophie Wilhelm, Jakob Koepernick, Steve Seeger, Markus Markl, Christian Hamel, or Julie

---

[1] Because this case is before the court on Plaintiff's motion for partial summary judgment, the court sets out any disputed facts in the light most favorable to Defendants. *See Ahearn v. Shinseki*, 629 F.3d 49, 53-54 (1st Cir. 2010) (citing *Cox v. Hainey*, 391 F.3d 25, 29 (1st Cir. 2004)). The facts are taken from the consolidated statement of facts (Dkt. No. 100), which includes Plaintiff's statement of facts ("Pl. SOF"); Defendants' responses thereto ("Def. Resp."); Defendants' statement of facts ("Def. SOF"); and Plaintiff's responses thereto ("Pl. Resp."); as well as from the materials cited in the record.

Rodriguez, and between May 15, 2017, and his final date of employment, he did not supervise Brigitta Rainer (Pl. SOF ¶¶ 6-7; Def. Resp. ¶¶ 6-7).

The parties dispute whether Plaintiff hired or fired any employees while employed by Defendants. Plaintiff maintains that he did not have the authority to do so, while Defendants assert that Plaintiff hired his friend Marc Delgrande as a valet at Wheatleigh (Pl. SOF ¶¶ 14, 17; Def. Resp. ¶¶ 14, 17; Def. SOF ¶ 56; Pl. Resp. ¶ 56). The parties also dispute Plaintiff's role in the hiring of his niece Arleta Mongue as a server. According to Defendants, Plaintiff recommended that Mongue be hired as a server, and she was (Def. SOF ¶ 55). Plaintiff, on the other hand, maintains that he introduced Mongue to Restaurant Manger Christian Hamel and General Manager Marc Wilhelm, but was not involved in her hiring process (Pl. Resp. ¶ 55). The parties agree that Plaintiff participated in an interview of Julie Rodriguez, who was subsequently hired (Pl. SOF ¶16; Def. Resp. ¶ 16).

## II. DISCUSSION

### A. Motion to Dismiss for Fraud on the Court

As the First Circuit has explained, it is "elementary that a federal district court possesses the inherent power to deny the court's processes to one who defiles the judicial system by committing a fraud on the court." *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989). "A 'fraud on the court' occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Id.* (citing *Alexander v. Robertson*, 882 F.2d 421, 424 (9th Cir. 1989); *Pfizer, Inc. v. International Rectifier Corp.*, 538 F.2d 180, 195 (8th Cir. 1976); *England v. Doyle*, 281 F.2d 304, 309 (9th Cir.

1960); *United Bus. Commc'ns, Inc. v. Racal–Milgo, Inc.*, 591 F. Supp. 1172, 1186–87 (D. Kan. 1984); *United States v. ITT Corp.*, 349 F. Supp. 22, 29 (D. Conn. 1972), *aff'd mem.,* 410 U.S. 919 (1973)).  "A finding of fraud upon the court 'may be justified only by the most egregious misconduct directed to the court itself, and ... it must be supported by clear, unequivocal and convincing evidence.'" *Emigrant Residential LLC v. Pinti*, No. 19-CV-12258-DJC, 2021 WL 1131812, at *7 (D. Mass. Mar. 24, 2021), *appeal docketed*, No. 21-1330 (1st Cir. Apr. 29, 2021) (quoting *United States v. Yeje-Cabrera*, 430 F.3d 1, 29 n.22 (1st Cir. 2005)).  "Because dismissal sounds 'the death knell of the lawsuit,' district courts must reserve such strong medicine for instances where the defaulting party's misconduct is correspondingly egregious." *Aoude*, 892 F.2d at 1118.  "For example, dismissal is warranted where a plaintiff vigorously prosecutes a suit based upon a document he fabricated, *Aoude*, 892 F.2d at 1118-19, or where a plaintiff deliberately conceals evidence of prior injury in order to enhance damages, *Hull v. Municipality of San Juan*, 356 F.3d 98, 102-03 (1st Cir. 2004)." *Plasse v. Tyco Elecs. Corp.*, 448 F. Supp. 2d 302, 308 (D. Mass. 2006) (ordering dismissal where the plaintiff destroyed and modified electronic documents).

Defendants seek dismissal of Plaintiff's complaint based on what they characterize as a "scheme of falsehoods," including Plaintiff's false statements regarding his term of employment at Wheatleigh, lies about the number of hours he worked, suppression of discoverable electronic communications, and miscellaneous other lies and misrepresentations under oath.  Defendants claim that Plaintiff's fraud is not peripheral, but rather goes to the heart of his claims.  The only alleged lies or misrepresentations that could be considered central to Plaintiff's claims are those regarding when he started as Guest Services Manager and the hours he worked as Guest Services Manager, which directly impact his potential damages.  The remainder would have little to no

4

effect on liability or damages in this matter, including when he started his employment at Wheatleigh (as opposed to when he started as Guest Services Manager), his employment at the Kemble Inn after he left Wheatleigh, and his attendance (or non-attendance) and degree (or lack thereof) from the University of Texas at Tyler. While this is likely powerful impeachment evidence, these are not lies that could themselves "generate an unfair resolution of the case." *Starski v. Kirzhnev*, Civil Action No. 06-10157-DPW, 2011 WL 923499, at *10 (D. Mass. Mar. 15, 2011).

Regarding the alleged lies and misrepresentations about Plaintiff's tenure as Guest Services Manager and his hours, Defendants have not shown by clear and convincing evidence that Plaintiff "sentiently set in motion some unconscionable scheme" to inflate his damages as they claim. *Aoude*, 892 F.2d at 1118. Plaintiff only approximated his start date as Guest Services Manager and even Defendants cannot identify with certainty what that date was. Crediting Defendants' approximations of March 2016 or June 2016, Plaintiff's belief as to his first day may be off by as little as three to six months. But even if he was off by an entire year or more, Defendants have not shown that Plaintiff knew his testimony was false or that it was part of a scheme to defraud this court. Indeed, Plaintiff has submitted an affidavit averring that the dates he has provided to Defendants represent his best recollection (Dkt. No. 99-1 at ¶ 3). Similarly, with respect to Plaintiff's interrogatory answer that his hours varied, but that he almost always worked more than 40 hours per week, and at times as much as 100 hours per week in the busy season, Plaintiff explains in his affidavit that the estimation genuinely represented his belief regarding the hours that he worked (Dkt. No. 99-1 at ¶ 4). Defendants, of course, may dispute Plaintiff's recollection of the hours he worked and attempt to impeach his credibility through

5

timecards and pay records, but Defendants have not shown that Plaintiff lied under oath, let alone that he was executing on a scheme to defraud this court.

Finally, Defendants have identified three pieces of electronic communication – an email chain with a subsequent employer (Dkt. 97-6); Facebook messages between Plaintiff and Christian Hamel, a former co-worker and plaintiff in another case against the same Defendants (Dkt.97-7); and a post on Plaintiff's Facebook page concerning his subsequent employment at Kemble Inn (Dkt. 97-8) – that Plaintiff failed to turn over in discovery.  Defendants have not shown that Plaintiff's failure to turn over these documents was deliberate.  With respect to the communications with Hamel, Plaintiff has averred that he forgot that they existed and notes that they were otherwise produced in discovery by Hamel, whose case has been consolidated with this one for purposes of discovery.  Plaintiff does not offer any explanation of his failure to turn over the email chain or post on his Facebook page.  However, the failure to turn over two peripheral documents in discovery is not egregious enough to warrant the extreme sanction of dismissal.  Thus, Defendants' motion to dismiss for fraud on the court will be denied.

    **B. Motion for Partial Summary Judgment**

        1. Standard of Review

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' when a rational factfinder could resolve it either direction." *Mu v. Omni Hotels Mgmt. Corp.*, 882 F.3d 1, 5 (1st Cir.), *rev. denied*, 885 F.3d 52 (1st Cir. 2018) (citing *Borges ex rel. S.M.B.W. v. Serrano–Isern*, 605 F.3d 1, 4 (1st Cir. 2010)). "A fact is

'material' when its (non)existence could change a case's outcome. *Id*. (citing *Borges*, 605 F.3d at 5).

A party seeking summary judgment is responsible for identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden either by "offering evidence to disprove an element of the plaintiff's case or by demonstrating an 'absence of evidence to support the non-moving party's case.'" *Rakes v. United States*, 352 F. Supp. 2d 47, 52 (D. Mass. 2005) (quoting *Celotex*, 477 U.S. at 325). If the moving party meets its burden, "[t]he non-moving party bears the burden of placing at least one material fact into dispute." *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The record is viewed in favor of the nonmoving party, and reasonable inferences are drawn in the nonmoving party's favor. *See Garcia-Garcia v. Costco Wholesale Corp.*, 878 F.3d 411, 417 (1st Cir. 2017) (citing *Ameen v. Amphenol Printed Circuits, Inc.*, 777 F.3d 63, 68 (1st Cir. 2015)).

Defendants rely on a case from the Southern District of New York for the proposition that motions for partial summary judgment are generally disfavored and that it is not appropriate to grant Plaintiff's motion for partial summary judgment under these circumstances because it will not be conducive to the conservation of judicial resources nor beneficial to the parties. *See Bruschini v. Bd. of Educ. of Arlington Cent. Sch. Dist.*, 911 F. Supp. 104, 106 (S.D.N.Y. 1995). The court rejects Defendants' argument for several reasons. First, Fed. R. Civ. P. 56 was amended in 2010 to add the phrase "partial summary judgment" to the caption and to make the first sentence read, "[a] party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." *Id*.

The first sentence was added "to make clear at the beginning that summary judgement may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense." Advisory Committee Notes, 2010 Amendment. Thus, the rule specifically contemplates motions such as this one which move for summary judgment as to a particular defense, and nothing in the rule suggests that such motions are disfavored. The court notes that the case Plaintiff cites pre-dates the 2010 amendments to Rule 56. Second, the court was unable to locate any decisions in the First Circuit that suggest that motions for partial summary judgement are disfavored. Finally, even if such motions were disfavored (they are not), the court finds that in this case, deciding the motion may be conducive to the conservation of judicial resources and be beneficial to the parties. *Bruschini*, 911 F. Supp. at 106 (finding that ruling on the motion for partial summary judgment would serve the interests of justice). To the extent that the viability of the executive exemption can be determined on summary judgment, it will eliminate a defense and may promote settlement or reduce the length of trial. Therefore, the court proceeds to analyze Plaintiff's motion.

  2. <u>Fair Labor Standards Act</u>

The overtime provisions of the FLSA establish the general rule that employees must be compensated at a rate not less than one and one-half times their regular rate for all hours worked in excess of 40 during a single workweek. 29 U.S.C. § 207(a)(1). Relevant to this case, an employer is exempted from this general rule for employees in a "bona fide executive … capacity." 29 U.S.C. § 213(a)(1). The employer bears the burden of establishing an exemption. *Reich v. Newspapers of New England, Inc.*, 44 F.3d 1060, 1070 (1st Cir. 1995). A job title is not determinative of whether an employee is exempt under the FLSA. *Cash v. Cycle Craft Co., Inc.*, 482 F. Supp. 2d 133, 136 (D. Mass. 2007), *aff'd*, 508 F.3d 680 (1st Cir. 2007) (citing 29 C.F.R. §

541.2).  "Whether an employee is exempt is determined by the employee's actual work activities, not by the employer's characterization of those activities through a job title or job description."  *Pippins v. KPMG, LLP*, 921 F. Supp. 2d 26, 42 (S.D.N.Y. 2012) (citations omitted).

"Pursuant to regulations issued by the Secretary of Labor, an employer seeking to establish that an employee is an exempted 'executive' must show: (1) the employee's salary is at least $455 per week, (2) the employee's 'primary duty' is management, (3) the employee 'customarily and regularly directs the work of two or more other employees,' and (4) the employee 'has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.'"  *Marzuq v. Cadete Enters., Inc.*, 807 F.3d 431, 435 (1st Cir. 2015) (quoting 29 C.F.R. § 541.100(a)).  "Concurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements of § 541.100 are otherwise met."  29 C.F.R. § 541.106(a).  However, each of the four requirements must be met for the exemption to apply.  *Marzuq*, 807 F.3d at 435.  "A genuine dispute as to any of the four requirements is sufficient to deny summary judgment."  *Roberts v. TJX Cos., Inc.*, No. 13-cv-13142-ADB, 2017 WL 1217116, at *7 (D. Mass. Mar. 31, 2017) (citing *Marzuq*, 807 F.3d at 435).  According to Plaintiff, Defendants cannot meet their burden with respect to prongs (3) and (4).  The court addresses each in turn.

   1. <u>The "Customarily and Regularly Directs the Work of Two or More Other Employees" Requirement</u>

The third requirement under the executive exemption is that the employee customarily and regularly directs the work of two or more other employees.  29 C.F.R. § 541.100; *Marzuq*, 807 F.3d at 435.  The requirement consists of two components – first, that the exempt employee

9

direct the work of two or more other employees and second, that he or she do so "customarily and regularly."

Pursuant to Department of Labor regulations, "[t]he phrase 'two or more other employees' means two full-time employees or their equivalent." 29 C.F.R. § 541.104(a). The regulations do not define "full-time," but the Department of Labor's Wage-Hour Division in its Field Operations Handbook has established a bright-line rule: any number of part-time employees will be the equivalent of two full-time employees working 40-hour weeks, so long as the total number of hours supervised exceeds eighty. *Perez v. RadioShack Corp.*, 386 F. Supp. 2d 979, 985 (N.D. Ill. 2005). The First Circuit has concluded that this 80-hour rule is reasonable and has applied it. *Sec'y of Labor v. Daylight Dairy Prods., Inc.*, 779 F.2d 784, 787 (1st Cir. 1985), *disapproved of on other grounds*, *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988). *See also Perez*, 386 F. Supp. 2d at 986-987 ("Th[e] regulations, and the case law interpreting them, indicate that an employee must supervise 80 hours of subordinate work per week in order to qualify for the executive exemption, except in limited circumstances where the industry as a whole has a standard workweek of slightly less than 40 hours."). The regulations go on to provide that "[t]he supervision can be distributed among two, three or more employees, but each such employee must customarily and regularly direct the work of two or more other full-time employees or the equivalent. Thus, for example, a department with five full-time nonexempt workers may have up to two exempt supervisors if each such supervisor customarily and regularly directs the work of two of those workers." 29 C.F.R. § 541.104(b). Finally, "[h]ours worked by an employee cannot be credited more than once for different executives." 29 C.F.F. § 541.104(d). "Thus, a shared responsibility for the supervision of the same two employees in the same department does not satisfy this requirement," but "a full-time employee who works four

10

hours for one supervisor and four hours for a different supervisor … can be credited as a half-time employee for both supervisors." *Id*.

"The phrase 'customarily and regularly' means a frequency that must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701. "Tasks or work performed 'customarily and regularly' includes work normally and recurrently performed every workweek; it does not include isolated or one-time tasks." *Id*. "[C]ourts have not required employers to show that the manager directed a total of eighty employee-hours of work each week for the entire relevant period of time in order to satisfy the 'customarily and regularly' requirement." *Ward v. Fam. Dollar Stores, Inc.*, 830 F. Supp. 2d 102, 112 (W.D.N.C. 2011). That said, in *Daylight Dairy Prods., Inc.*, 779 F.2d at 784, the First Circuit found 76% of the time to be too low to satisfy the "customarily and regularly" requirement. *Id*. at 788. *See also Jackson v. Go-Tane Servs.*, 56 F. App'x 267, 272 (7th Cir. 2003) (finding that a manager directing eighty employee-hours of work each week 67% of the time did not "customarily and regularly" direct the work of two or more employees). The Fourth Circuit, on the other hand, found a manager to qualify as an executive where she directed eighty employee-hours of work each week for 89.23% of the relevant time period. *Grace v. Fam. Dollar Stores, Inc.*, 637 F.3d 508, 513 (4th Cir. 2011).

Plaintiff relies on an analysis of front-of-the-house schedules for each week from January 1, 2017, through January 20, 2018, to argue that Defendants cannot meet their burden of proving that he "customarily and regularly" directed the work of two or more other employees (Dkt. No. 90-8).[2]  Plaintiff identified the total number of hours each week that his schedule overlapped with that of any front-of-the-house employees who, on the record before the court, he may have

---

[2] Plaintiff submitted schedules dating from March 20, 2016 (Dkt. No. 90-4).  It is unclear why Plaintiff did not analyze the schedules from March 20, 2016, though December 31, 2016.

11

supervised (Dkt. No. 90-8). For that 55-week period, there was only one week – July 23 – 30, 2017 – when Plaintiff was scheduled to work a total of 80 overlapping hours with any such employees (Dkt. No. 90-8). It is disputed whether Plaintiff can be charged with supervising a total of at least 80 hours of subordinate employees' time during this week (Pl. SOF ¶ 5; Def. Resp. ¶ 5). Even if he did so, however, this would not be sufficient to establish that he "customarily and regularly" directed the work of two or more other employees during that 55-week period.

Defendants' primary rejoinder is that "unusual circumstances" justify applying a lower standard here. Specifically, Defendants rely on *Murray v. Stuckey's, Inc.*, 50 F.3d 564, 569 (8th Cir. 1995), in which the court took into account that some of the defendant stores were operating on a skeletal basis in the winter, to argue that this court should take into account that Wheatleigh has a lengthy off-season running from October through April. Defendants implicitly concede that, during the off-season, Plaintiff did not "customarily and regularly" direct the work of two or more other employees. However, according to Defendants, the court should consider only the time-period from May through September when the front-office was operating at full-staff. For that time-period, based on Defendants' calculations, Plaintiff directed the work of two or more full-time employees or their equivalent 8 out of 10 pay periods in 2016 and 5 out of 10 pay periods in 2017.[3] Defendant argues that based on these figures whether Plaintiff satisfied this prong is a question for the jury.

---

[3] Unlike Plaintiff, Defendants did not submit any documentation or explanation regarding their analysis. Thus, it is not entirely clear how Defendants arrived at these figures. According to Plaintiff's analysis, even during the busy season, Plaintiff never supervised two full-time employees or their equivalent in 2017 and 2018. Nevertheless, since this is Plaintiff's motion and the court views the record in the light most favorable to Defendants, the court accepts Defendants' assertion for purposes of this motion.

Assuming without deciding that the court should consider only the busy season from May through September, Defendants have failed to place a material fact in dispute. By their own admissions, Defendants at best can show that Plaintiff directed the work of two or more full-time employees or their equivalent 65% of the time during the busy season (13 out of 20 pay periods).[4] As is set forth above, the First Circuit has ruled as a matter of law that 76% of the time is too low to satisfy the "customarily and regularly" requirement. *Daylight Dairy Prods., Inc.*, 779 F.2d at 788. Defendants rely on *Rubery v. Buth-Na-Bodhaige, Inc.*, 470 F. Supp. 2d 273 (W.D.N.Y. 2007), for the proposition that "[i]f the evidence demonstrates … that plaintiff's supervision of 80 subordinate hours occurred less than 80% of the time, then the jury should decide whether that frequency constitutes "customary and regular." *Id*. at 278. This argument is at odds with *Daylight Dairy Prods., Inc.*, which is controlling law in this circuit. Because the burden is on Defendant and Defendant cannot prove that Plaintiff customarily and regularly directed the work of two or more other employees, Plaintiff is entitled to summary judgment in his favor.

### 2. The Hiring/Firing Requirement

The court proceeds with an analysis of the fourth requirement for the executive exemption – that is, whether the employee "has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight" – to determine if it provides an additional ground for granting summary judgment. 29 C.F.R. § 541.100(a)(4). The regulations provide that "[t]o determine whether an employee's suggestions and

---

[4] As Plaintiff points out, the percentage is significantly lower when the entire year is considered. Based on Defendants' admissions, Plaintiff supervised two or more full-time employees or their equivalent only 13 pay periods out of 52, or 25% of the time.

13

recommendations are given 'particular weight,' factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon." 29 C.F.R. § 541.105.  "An employee's suggestions and recommendations may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status." *Id*.

Plaintiff argues that Defendants cannot satisfy the hire-and-fire element because he did not have the authority to hire or fire employees nor can Defendants show that his suggestions or recommendations were given any particular weight because making such suggestions or recommendations was not part of his job duties and the only evidence in the record regarding Plaintiff's having any involvement in hiring, firing, advancement, or promotion is that he participated in a single interview of an employee, Julie Rodriguez, who was ultimately hired (Pl. SOF ¶ 16; Def. Resp. ¶ 16).  Defendants counter that in addition to participating in the interview of Julie Rodriguez, Plaintiff hired his friend, Marc Delgrande, as a valet; that he recommended his niece, Arleta Mongue, be hired as a server; and that he recommended the firing of a bell boy (Def. Resp. ¶ 15; Def. SOF ¶¶ 55, 56).

While the court agrees with Plaintiff that Defendants have not pointed to evidence to show that Plaintiff had the authority to hire or fire, the court nevertheless finds that Defendants, while barely, have created a triable issue as to whether Plaintiff's suggestions or recommendations were given any particular weight.  Defendants' assertion that Plaintiff hired Marc Delgrande is not borne out by the record; the testimony on which Defendants rely is not

14

that Plaintiff hired Mr. Delgrande, but rather that he recommended him (Dkt. 97-17 at 170). Moreover, in their Answers to Interrogatories, Defendants averred that Plaintiff "had the authority to recommend hiring, firing, promotions, and other changes to the employment status of employees in the front office department, he did not have ultimate authority to hire or fire front office employees at Wheatleigh" (Dkt. No. 87-5 at ¶ 8). Thus, it is undisputed that Plaintiff did not have the authority to hire or fire other employees. Turning to the issue of whether Plaintiff's suggestions or recommendations as to hiring, firing, advancement, promotion, or any other change of status of other employees were given particular weight, the court notes that Plaintiff's mere participation in the interview of Julie Rodriguez is not evidence on this point. The record is silent as to whether Plaintiff made any suggestion or recommendation regarding Ms. Rodriguez's hiring. On the other hand, the record does support that Plaintiff recommended Mr. Delgrande as a valet, and he was hired; that Plaintiff recommended Ms. Mongue as a server, and she was hired; and that Plaintiff recommended the firing of a bell boy. This is sufficient to withstand summary judgment on this issue. However, as set forth above, Plaintiff is nevertheless entitled to summary judgment as to the inapplicability of the executive exemption based on the absence of a genuinely disputed fact on the question of whether he customarily and regularly directed the work of two or more other employees.

### C. Motion to File Supplemental Brief

Defendants have filed a motion to file a supplemental brief, arguing that clarification is required regarding whether the administrative exemption remains at issue as an affirmative defense in this case.[5] Defendants plead the administrative exemption as an affirmative defense

---

[5] An employer must show three elements for an employee to be classified as an administrative employee. First, the employee must be compensated at a rate of not less than $455 per week; "second, the 'primary duty' of the employee must be 'the performance of office or non-manual work directly related to the management or general business operations of the employer;' and

15

in their answer (Dkt. No. 11 at 6).  However, at the hearing on Plaintiff's motion for partial summary judgment, Plaintiff's counsel suggested that the only exemption Defendants were raising was the executive exemption, and defense counsel failed to correct this statement. Additionally, at Wheatleigh's Fed. R. Civ. P. 30(b)(6) deposition, Wheatleigh's designee, Wilhelm, testified that Defendants were only claiming the executive exemption as to Plaintiff. Defendants argue that these omissions should not be construed as a waiver of the administrative exemption as an affirmative defense because defense counsel's failure to correct Plaintiff's counsel's statement was an oversight, and Wilhelm is not a lawyer.  According to Defendants, the only conceivable prejudice that Plaintiff might have suffered is that Plaintiff's counsel might have directed more questioning to Wilhelm about Plaintiff's primary duties in the context of the administrative exemption.  Defendants offer the re-opening of the 30(b)(6) deposition as an adequate remedy.

Plaintiff counters that Defendants had many opportunities to clarify their continued reliance on the administrative exemption, including before, during, and after the 30(b)(6) deposition when Plaintiff's counsel asked Defendants to identify the exemptions on which they intended to rely; in their summary judgment papers; and during oral argument on the motion for summary judgment.  Plaintiff indicates that he has been prejudiced insofar as his counsel did not examine the 30(b)(6) witness or any other witness about the requirements relating to the administrative exemption.

The court declines to find that Defendants have waived a defense properly plead in their answer under these circumstances.  Defendants cite to two cases in which courts have found that

---

third, the employee's 'primary duty' must 'include[] the exercise of discretion and independent judgment with respect to matters of significance.'" *Rooney v. Town of Groton*, 577 F. Supp. 2d 513, 532 (D. Mass. 2008) (quoting 29 C.F.R. § 541.200(a)(1)-(3)).

defendants did not waive the administrative exemption despite not pleading the affirmative defense in their answers and raising it for the first time on summary judgment where no prejudice was shown.  *Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 632 (7th Cir. 2010); *Antiskay v. Contemporary Graphics and Bindery, Inc.*, Civil No. 11-7579 (NLH/KMW), 2013 WL 6858950, at *7 (D.N.J. Dec. 26, 2013).  Defendants' case is stronger here where they properly raised the defense in their answer.  While it certainly would have been preferable for defense counsel to have stated that Defendants continued to rely on the defense sooner, Plaintiff has not pointed to any analogous cases where courts have found waiver.  Nevertheless, the court finds that supplemental briefing regarding the administrative exemption is not necessary as Plaintiff's motion seeks partial summary judgment only as to the executive exemption.  Therefore, the court will deny Defendants' motion to file a supplemental brief.  The court will allow Plaintiff to re-open the 30(b)(6) deposition, limited to the topic of the administrative exemption, to remedy any possible prejudice.

### III.    CONCLUSION

For the above-stated reasons, Defendants' motion to dismiss for fraud on the court (Dkt. No. 96) is DENIED, Plaintiff's motion for partial summary judgment as to the inapplicability of the executive exemption (Dkt. No. 85) is GRANTED, and Defendant's motion to file a supplemental brief (Dkt. No. 109) is DENIED.

It is so ordered.

/s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
United States Magistrate Judge

DATED: September 8, 2021